UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) | MISC. NO. ____<br><br>**Filed Under Seal** |

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Google, Inc., an Internet service provider, located in Mountain View, California, to disclose certain records and other information pertaining to the email accounts cpcogroup@gmail.com as described in Part I of Attachment A. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

LEGAL BACKGROUND

1. Google, Inc. is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require Google, Inc. to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically,

the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i). *See* 18 U.S.C. § 2711(3)(A)(ii).

3. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

1. The United States is investigating the possible violation of, inter alia, 13 U.S.C. Section 1343, wire fraud. Specifically, Ali Mohammed Mohajer, through forgeries and instrumentalities, utilized emails as well as other means, to cause Richard Sommerfeld to make wire transfers of approximately $395,000 to Mohajer. Mohajer then diverted the funds for his own use rather than for the purposes intended by Sommerfeld.

2. In May 2013, Sommerfeld was interested in purchasing large volumes of oil from two refineries in Russia. The purchase price of a shipload of refined oil product was approximately $33.5 million. The refineries did not require payment of the money immediately but instead required a "Proof of Funds" letter showing that money was blocked in an account to pay the price upon completion of the exchange. Sommerfeld did not have the money on his own to guarantee the payment and as such sought outside financing.

3. Mohajer offered to enter into a joint venture with Sommerfeld whereby Mohajer would lease to Sommerfeld a bank account he claimed he maintained in the Dominican Republic

that contained $200 million. Additionally, Mohajer offered to send the Russian refineries a "Proof of Funds" letter, or SWIFT MT799, advising that the money was available for the petroleum deal. In exchange, Sommerfeld was to provide approximately $395,000 as well as approximately 25% of any realized profits from the petroleum sale to Mohajer.

4.  In June 2013, Sommerfeld and Mohajer negotiated a joint venture agreement. Drafts and final signed copies of the agreement were exchanged through Mohajer's email account cpcogroup@gmail.com. Mohajer then directed Sommerfeld to wire money specific accounts. Once Mohajer obtained the funds, he was supposed to have Shanghai Commercial and Savings Bank ("SCSB") issue the SWIFT MT799.

5.  On June 18, 2013, Sommerfeld wired approximately $143,750 to an escrow agent whose bank account was located in Washington. D.C. On June 24, 2013, Sommerfeld wired an additional $83,750 to the same escrow agent. On June 24, 2013, after the funds transferred, Sommerfeld and Mohajer, using email account cpcogroup@gmail.com, exchanged emails that discussed that the bank had not yet issued a SWIFT MT799 message to show that the funds were blocked. On June 25, 2013, Mohajer, using cpcogroup@gmail.com, informed Sommerfeld that the reason for the delay was due to an employee's leave of absence.

6.  On June 26, 2013, Sommerfeld directed the escrow agent to wire $150,000 to an account identified by Mohajer and $67,500 to Mohajer's personal account. On July 22, 2013, Mohajer, using cpcogroup@gmail.com, sent an email to Sommerfeld stating that he had received a report regarding the missing MT799. Based on Mohajer's representations, on July 29, 2013, Sommerfeld wired an additional $167,000 to Mohajer's bank account.

7.  On July 22, 2013, Mohajer advised Sommerfeld that a SWIFT MT 799 had been issued by SCSB and provided a copy of the SWIFT MT 799 to Sommerfeld.

8.      Subsequently, Sommerfeld contacted SCSB who advised that it was unaware of any MT 799 Blocked Funds Confirmation associated with Sommerfeld and had never received any money from Mohajer. SCSB also advised that the document Sommerfeld received from Mohajer was not a legitimate SWIFT MT 799.

9.      The FBI's investigation has determined that Mohajer neither owned a bank account in the Dominican Republic nor did business in the Dominican Republic.

## REQUEST FOR ORDER

10.     The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the events described above, and to determine the nature and scope of their activities. Accordingly, the United States requests that Google, Inc. be directed to produce all items described in Part II of Attachment A to the proposed Order.

11.     The United States further requests that the Order require Google, Inc. not to notify any person, including the subscribers or customers of the account(s) listed in Part I of Attachment A, of the existence of the Order until further order of the Court. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its

disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

12. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

                                        Respectfully submitted,

                                        RONALD C. MACHEN JR.
                                        United States Attorney
                                        D.C. Bar No. 447889

By: /s/ Michelle A. Zamarin
                                        MICHELLE A. ZAMARIN
                                        D.C. Bar No. 474042
                                        Assistant United States Attorney
                                        Fraud and Public Corruption Section
                                        555 4th Street N.W.
                                        Washington, D.C. 20530
                                        (202) 252-6931
                                        michelle.zamarin@usdoj.gov